The Honorable J. Richard Creatura

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NINTENDO OF AMERICA INC.,

    Plaintiff,

vs.

LE HOANG MINH, d/b/a WINMART

    Defendant.

NO. 2:20-cv-01707-RSM-JRC

**MOTION FOR DEFAULT JUDGMENT**

NOTE FOR MOTION CALENDAR:

April 14, 2021

## INTRODUCTION

Plaintiff Nintendo of America Inc. filed this action against Defendant Le Hoang Minh, d/b/a Winmart for trafficking in devices intended to circumvent Nintendo's technological protection measures to control access to copyrighted works. Defendant has failed to timely answer the complaint or otherwise make any appearance in defense of this action, and the Clerk has entered Defendant's default. [Dkt. 15.] Nintendo now moves for entry of a default judgment under Federal Rule of Civil Procedure 55(b) and Local Rule 55.

## BACKGROUND

This is a lawsuit for trafficking in circumvention devices in violation of the Digital Millennium Copyright Act's (DMCA) anti-trafficking provisions under 17 U.S.C. § 1201 and abuse of the DMCA's counter-notification system under 17 U.S.C. § 512(f). The Court has jurisdiction under 28 U.S.C. §§ 1331 & 1338(a) and 17 U.S.C. §§ 1201 & 1203.

Nintendo is a company and brand famous throughout the United States and the world, known by consumers of all ages for its video games, video game consoles, and video game characters. Dkt. 1 ("Compl.") ¶ 8. In March 2018, Nintendo released a new console called the

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC      - 1 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

Nintendo Switch, a home video console that can also be played "on the go" in handheld mode. Compl. ¶ 10. The Nintendo Switch has become one of the best-selling video games consoles of all time, selling worldwide over 79 million units as of December 31, 2020. Compl. ¶ 11; *see also* Nintendo, *Investor Relations Information*, https://www.nintendo.co.jp/ir/en/finance/hard_soft/index.html (last visited Feb. 12, 2021) Nintendo also makes award winning video game software that consumers can exclusively play on the Nintendo Switch. Compl. ¶ 12.

The popularity of Nintendo's video games and video game consoles has made Nintendo the target of intellectual property pirates who misappropriate and unfairly benefit from Nintendo's innovation and investment. Compl. ¶ 13. To protect its intellectual property against video game piracy, and to ensure that only authorized and licensed Nintendo Switch games are played on the Nintendo Switch console, Nintendo designed the Nintendo Switch with sophisticated security features to prevent unauthorized access to the console, the circumventing of Nintendo's operating system, and the unauthorized copying, playing and sharing of games (the "technological protection measures" or "TPMs"). Compl. ¶ 15.[1]

Defendant sells a hardware device called the "RCM Loader," the sole purpose of which is to hack the Nintendo Switch video game console to allow people to play pirated video games on the console. Compl. ¶ 21. The RCM Loader device is made to be used with software ("payload injection files") that users then inject into their Nintendo Switch console to hack the device. Once the RCM Loader is physically inserted into the Nintendo Switch console, the accompanying payload injection files are injected into the console to hack the device. Compl. ¶ 22. Defendant's

---

[1] For more detail on the nature of the technological protection measures in the Nintendo Switch console and its video games, see Dkt. 1 ¶¶ 16-20.

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                - 2 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

RCM Loader device is designed to facilitate the use of payload injection files and unauthorized custom firmware (the "unauthorized CFW") including, among others, a product called SX OS.[2] The unauthorized CFW is then used to circumvent the TPMs that Nintendo implemented to prevent pirated video games and other unauthorized third-party software from being played on the Nintendo Switch. Once this circumvention has occurred, the unauthorized CFW modifies the Nintendo Switch operating system, thereby allowing users to obtain, play and copy pirated games made for the Nintendo Switch. All of this happens without authorization from, or compensation to, Nintendo or other authorized game publishers. Compl. ¶ 23.

Defendant has sold and shipped the RCM Loader circumvention device directly to customers through the Amazon e-commerce platform. Compl. ¶ 30. After Nintendo learned of Defendant's circumvention device, Nintendo filed a DMCA "takedown" notice with Amazon under 17 U.S.C. § 512(c), which was received by Defendant on October 21, 2020. Declaration of Christopher Weimer ("Weimer Decl.") ¶ 3. This resulted in the temporary removal of Defendant's product listing from Amazon. Compl. ¶ 32.

In response to Nintendo's DMCA takedown notice, Defendant submitted a counter-notification to Amazon under 17 U.S.C. §512 (g)(3) on November 4, 2020, in which it asserted a variety of defenses to Nintendo's circumvention claims under the Copyright Act.[3] Under 17

---

[2] SX OS has previously been the subject of a permanent injunction issued in this District against resellers of SX OS license keys and other circumvention devices. *See Nintendo of America Inc. v. ANXCHIP.COM, et al.,* Case No. 2:20-CV-00738-TSZ, Dkt. #28 (W.D. WA, October 6, 2020). The RCM Loader hardware is compatible with multiple unauthorized CFW, including but not limited to the SX OS, and is often marketed by sellers as such. *See, e.g.*, XKit, *RCMloader*, https://www.xkit.xyz/rcmloader/ (last visited Feb. 12, 2021).

[3] Under the DMCA, the accused seller must declare in a counternotification under penalty of perjury that he or she has a good faith belief that the accused material was removed by mistake

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC             - 3 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

U.S.C. § 512 (g)(2)(B) and (C), on receipt of the counternotification, Amazon was required to notify Nintendo and replace the removed material or cease disabling access to Defendant's Amazon listing for the RCM Loader unless Nintendo provided Amazon notice within ten days that it had filed a civil action to restrain the Defendant from the infringing activity. Compl. ¶ 33.

Accordingly, Nintendo filed its complaint on November 18, 2020. This Court authorized Nintendo to serve Defendant by email. *See* Dkt. 12. As authorized by the Court's order, Nintendo completed service on January 7, 2021 to the email address from which Defendant submitted the DMCA counter-notification, minhkayak43@gmail.com. *See* Weimer Decl. ¶¶ 5–6.

Defendant's deadline to serve an answer or other responsive pleading—21 days from service of the summons and complaint—elapsed on January 28, 2021. Defendant failed to answer or otherwise file a responsive pleading. Defendant did not contact counsel for Nintendo in the intervening time or since. *Id.* ¶ 10. Thus, Defendant is in default. *See* Fed. R. Civ. P. 55. The Clerk entered default against Defendant on February 22, 2021 Dkt. 15.

## ARGUMENT

Nintendo is entitled to a default judgment on each of its three claims. Nintendo asks the Court to enter judgment and award the relief outlined below.

### I. Nintendo is entitled to a default judgment on each of its claims.

To obtain a default judgment, a party must obtain a Clerk's entry of default under Federal Rule of Civil Procedure 55(a), and either request that the Clerk enter default judgment when the claim is for a "sum that can be made certain by computation" or apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(1) & (2). The Clerk has entered default here, and Nintendo has

---

or misidentification. 17 U.S.C. § 512(g)(3)(C). In addition to various defenses, Defendant's counternotification included such a sworn statement. *See* Compl., Exh. A at 2.

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC

- 4 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

obtained a copy of the entry of default. [Dkt. 15.] Nintendo now applies for the Court for entry of a default judgment.

To determine whether a party is entitled to a default judgment, courts evaluate: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was due to excusable neglect; and (7) the policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Although the final *Eitel* factor always weighs in favor of the defaulting party, all six remaining factors weigh in favor of Nintendo in these circumstances.

First, Nintendo will be prejudiced without entry of default judgment because it will have no remedy against Defendant, a foreign citizen living in Vietnam who abuses the DMCA counter-notification procedure to keep its illegal devices on U.S. e-commerce platforms. *See Criminal Prods., Inc. v. Gunderman*, Nos. C16-729-RAJ, 2017 WL 664047, at *3 (W.D. Wash. Feb. 17, 2017) ("Without entry of default judgment, Plaintiff will be prejudiced because it will be left without a proper remedy"). Addressing the second and third *Eitel* factors, Nintendo's substantive claims are strong, as discussed further below, and the complaint alleges in detail the infringing conduct. *See infra* Sections I.A & I.B. Defendant admitted these allegations by defaulting. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."). As for the fourth *Eitel* factor, the amount of money at issue is minimal. *See Crim Prods.*, 2017 WL 664047, at *2 (concluding that the fourth *Eitel* factor favored a default judgment because the amount at stake was "relatively modest"). To promote an efficient resolution, Nintendo at this time seeks only a $2,500 award of statutory damages under the DMCA, which is a highly conservative damages request for the reasons outlined below.

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                     - 5 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

The fifth and sixth *Eitel* factor also favor Nintendo. Defendant had the opportunity and failed to contest any material facts contained in Nintendo's complaint by failing to respond or appear in this lawsuit. There is no evidence that Defendant's failure to respond is the result of excusable neglect. *See Ferrari Fin. Servs. Inc. v. Biggs*, No. 3:19-CV-05873-RBL, 2020 WL 3971342 at *1 (W.D. Wash. July 14, 2020) (awarding default judgment, including costs and attorney fees). Nintendo served Defendant by email, as allowed by the Court's order. *See* Dkts. 12 & 13; Weimer Decl. ¶¶ 5–6. As the Court observed, email service in this case is "reasonably calculated under the circumstances to apprise defendant of the action." Dkt. 12 at 4. This is particularly true because "Amazon.com is using the email address as the means of communication with defendant" and "defendant is likely using the email address in connection with the allegedly infringing activity and as a primary means of communication." *Id.* at 3–4. Defendant knew of Nintendo's objections even before and immediately after this action was filed, as shown by Defendant's submission of its DMCA counter-notification to Amazon, in which it asserted defenses ostensibly under a standard of good faith—defenses it could have asserted here. Amazon then notified Defendant and provided him copies of the filing papers immediately after Nintendo filed the complaint in November. *See* 17 U.S.C. § 512(f); Weimer Decl. ¶ 3. Also, Nintendo took the extra precaution of attempting service at the physical address provided by Defendant in its counter-notification given to Amazon. Dkt. 10 at 7 n. 2. All of the available facts indicate that Defendant has actual notice of this action, and no facts indicate that Defendant has any excuse for its default.

The seventh and final *Eitel* factor always weighs in favor of the defaulting party given the policy preference for resolution of cases on their merits. Despite this inclination, Defendant's inaction presents this Court with no opportunity to decide this case on the merits. The remaining *Eitel* factors favor a default judgment against Defendant, and this Court should grant it.

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                     - 6 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

Sections A and B below discuss the strength of Nintendo's claims and the sufficiency of its complaint (*Eitel* factors 2 and 3).

### A. Trafficking in Devices in Violation of 17 U.S.C. §§ 1201(a)(2) & 1201(b)(1) (Counts 1 and 2)

The anti-trafficking provisions of the DMCA prohibit Defendant from trafficking in devices that are primarily designed to circumvent technological protection measures that effectively control access to copyrighted works. *See* 17 U.S.C. §§ 1201(a)(2) & 1201(b)(1). The statute provides that "no person shall . . . offer to the public . . . any technology, product, service, device, component, or part thereof" that is (1) primarily designed for circumvention, (2) has only a limited commercially significant purpose or use, and (3) is marketed with that person's knowledge for use in circumvention. 17 U.S.C. § 1201(a)(2)(A)–(C). Section 1201(b)(1) of the DMCA similarly prohibits persons from trafficking in devices that "circumvent protection afforded by a technological measure." *See* 17 U.S.C. §§ 1201(b)(1) & (b)(2)(A). Sections 1201(a)(2) & 1201(b)(1), the DMCA's two anti-trafficking provisions, give rise to Nintendo's first two claims against Defendant. *See* Compl. ¶¶ 37–64 (counts one and two). Trafficking in the circumvention device is a direct violation of Nintendo's rights under 17 U.S.C. §§ 1201 & 1203 regardless of whether a user ever actually uses the RCM Loader on the Nintendo Switch. *See* 17 U.S.C. § 1201(a)(2) (prohibiting "offer[ing] to the public," "provid[ing]," and "traffic[king]" in circumvention devices without requiring that the device actually be used).

Nintendo's complaint describes the sophisticated technological protection measures that Nintendo incorporates into its Nintendo Switch console and into its video games playable on the Switch console. *Id.* ¶¶ 13–20. These technological protection measures require the application of information with Nintendo's authority to gain access to the Nintendo Switch console and any copyrighted games playable on the console. *Id.* at ¶ 16. Defendant's RCM Loader device circumvents Nintendo's technological protection measures to enable users to play pirated games

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                          - 7 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

on the Nintendo Switch. *Id.* at ¶¶ 21–35. By offering the RCM Loader circumvention device to the public via Amazon.com—which Defendant admits by virtue of its default—Defendant has violated the DMCA by trafficking in a device that circumvents protection afforded by Nintendo's technological protection measures. *Id.* at ¶¶ 36–63; *see* Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."); *see also, e.g., Criminal Prods., Inc. v. Evans*, No. 16-CV-1647RAJ, 2018 WL 3105989, at *1 (W.D. Wash. Mar. 6, 2018) ("Once a default is entered against a party, all allegations other than damages are presumed to be true.") (*citing Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)). Nintendo is thus entitled judgment on counts one and two.

**B.  Abuse of DMCA Counter Notification Under 14 U.S.C. § 512(f) (Count 3)**

Any person that "knowingly misrepresents" to a service provider in a DMCA counter-notification that the person's material or activity is not infringing, or that the person's material or activity was removed by mistake or misidentification—and the misrepresentation results in the service provider replacing the removed material—is liable for any damages incurred by a copyright owner. 17 U.S.C. § 512(f).

After Nintendo initiated a proper DMCA takedown to prevent Defendant from trafficking in the circumvention devices, Defendant submitted a DMCA counter-notification to Amazon. Compl. ¶¶ 30–31; Weimer Decl. ¶ 3. Defendant alleged in the counter-notification that Defendant's circumvention device does not infringe Nintendo's rights because (1) Nintendo does not own any copyrighted material; (2) Nintendo lacks standing to file a DMCA takedown; (3) Defendant's sale of the circumvention device falls within the fair use exception of 17 U.S.C. § 107; and (4) that Nintendo filed the notice based on a "deliberate misreading if the law." *See* Compl, Exh. A. These assertions in Defendant's DMCA counter-notification are all false, Compl. ¶¶ 65–71, which Defendant has admitted by defaulting. *See* Fed. R. Civ. P. 8(b)(6); *Evans*, 2018 WL 3105989, at *1. In making these assertions, Defendant misrepresented that its activities do

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                                    - 8 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

not infringe Nintendo's rights, when in fact they do. *See* Compl. ¶¶ 65–71. Nintendo is thus entitled to judgment on count three.

## II. The Court should award a permanent injunction.

As a result of Defendant's violations of the DMCA, Nintendo is entitled to a permanent injunction restraining Defendant from further unlawful conduct. Nintendo is submitting a proposed final judgment and permanent injunction along with this motion.

The DMCA authorizes permanent injunctive relief as a remedy for violations of the DMCA anti-trafficking provisions.17 U.S.C. §§ 1203(b)(1)–(2). The DMCA also authorizes the Court to "order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation." *Id.* § 1203(b)(2). A party seeking a permanent injunction must show: (1) likelihood of success on the merits; (2) lack of adequate remedies at law; (3) the balance of hardships weighs in its favor; and (4) that the injunction is in the public's interest. *Criminal Prods.*, 2017 WL 664047, at *3. All four factors favor Nintendo.

First, Nintendo has succeeded on the merits of each of its claims by virtue of the Defendant's default. *See supra* Section I.

Second, by defaulting, Defendant has also admitted the complaint's allegations that Defendant's activities have caused and will cause irreparable injury to Nintendo and to the public, for which there is no adequate remedy at law. *See* Compl. ¶¶ 35–36, 50, 64. And even had Defendant not admitted those allegations of irreparable harm, an award of monetary damages alone would be insufficient to protect against Defendant's infringement. This Court has correctly observed that, in circumvention-device cases under the DMCA, the copyright owner will suffer irreparable harm if the defendant is allowed to continue trafficking in the circumvention device. *See RealNetworks, Inc. v. Streambox*, *Inc.*, No. 2:99-cv-02070, 2000 WL 127311, at *10 (W.D. Wash. Jan. 18, 2000) ("RealNetworks has demonstrated that it would likely suffer irreparable

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                          - 9 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

harm if the Streambox VCR is distributed. The VCR circumvents RealNetworks' security measures, and will necessarily undermine the confidence that RealNetworks' existing and potential customers have in those measures."). Also, because of the nature of Defendant's unlawful conduct, determining adequate damages would be virtually impossible. *See id.* ("It would not be possible to determine how many of RealNetworks' existing or potential customers declined to use the company's products because of the perceived security problems created by the VCR's ability to circumvent RealNetworks' security measures"). The Ninth Circuit and other district courts within this Circuit have reached similar conclusions in DMCA circumvention-device cases. *See, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (affirming finding of irreparable harm, and holding that the defendant's trafficking in circumvention devices would "undermine the value of the [plaintiffs'] copyrighted works . . . and their goodwill and negotiating leverage with licensees"); *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (finding irreparable harm, and emphasizing that the defendant's trafficking in circumvention devices "has induced and would continue to induce third parties—namely, [the defendant's] customers—to infringe Apple's copyrights by running" unauthorized software, which "harms. . . Apple's competitive position and reputation for quality"); *see also Nintendo of America Inc. v ANXCHIP.COM, et al.*, Case No. 2:20-CV-00738-TSZ, Dkt. 28 (W.D. Wa. October 6, 2020) (awarding default judgment and injunction based on *Eitel* factors for the online sale of circumvention devices).

Third, the balance of hardships weighs heavily in Nintendo's favor. An injunction against Defendant would merely require Defendant to comply with the DMCA and Copyright Act. *See Microsoft Corp. v. Marturano*, No. 1:06-cv-1747, 2009 WL 1530040, at *8 (E.D. Cal. May 27, 2009) ("The court perceives no harm to Defendant since an injunction [would] merely require Defendant to comply with the Copyright and Lanham Acts"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1220–22 (C.D. Cal. 2007) (finding that the balance

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC  - 10 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

of hardships weighed in the plaintiff's favor where the defendant had no "legitimate business purpose whatsoever" and could immediately resume its infringing activities if a permanent injunction was denied). Nintendo is not asking this Court to prevent the Defendant from conducting lawful business. Rather, Nintendo asks this Court to enjoin the Defendant from its unlawful activities that serve no purpose other than circumventing Nintendo's technological protection measures. *See Disney*, 869 F.3d at 867 (affirming finding that the only harm to defendant—"financial hardship from ceasing infringing activities"—did not "outweigh the irreparable harm likely to befall [the plaintiff] without an injunction").

Finally, a permanent injunction against Defendant would serve the public interest. In general, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" their works. *Id.* (quotation omitted). "[T]he public receives a benefit when the legitimate rights of copyright holders are vindicated." *Apple*, 673 F. Supp. 2d at 950; *see also Thompson Film, LLC v. Athias*, No. 13-CV-0126-TOR, 2014 WL 5543900, at *6 (E.D. Wash. Oct. 31, 2014) ("[T]he public's interest is undoubtedly served by preventing Defendants from further acts of [copyright] infringement").

The facts alleged in Nintendo's complaint satisfy all four injunction factors. Nintendo has succeeded on the merits of each of its claims by virtue of Defendant's default. Thus, Nintendo is entitled to a permanent injunction. Nintendo suggests language for a permanent injunction in the proposed judgment attached to this motion.

**III.    The Court should award statutory damages and attorney fees or actual damages in the alternative under Section 1203 of the DMCA.**

The DMCA entitles Nintendo to an award of statutory damages. *See* 17 U.S.C. § 1203(c)(3)(A). Nintendo is also entitled to actual damages and the Defendant's profits attributable to Defendant's violations of Section 1201. *See id.* § 1203(c)(2). Finally, the Court

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                - 11 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

also may allow for the recovery of Nintendo's costs and reasonable attorney's fees. *See id.* § 1203(b)(4)–(5).

Nintendo at this time seeks $2,500 in statutory damages under 17 U.S.C. § 1203(c)(3)(A); *see also* Compl., p. 14 ¶ E. For the reasons explained below, this request for a $2,500 award is intended to be very conservative and does not reflect anything close to the full amount of damages Nintendo could reasonably seek from Defendant.

**A. Statutory Damages for Violations of the DMCA's Anti-Trafficking Provisions**

For a violation of the DMCA's anti-trafficking provisions, a plaintiff may elect an award of not less than $250 nor more than $2,500 "per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A). The Court's determination of an appropriate award under the DMCA "mirrors the parallel inquiry under the Copyright Act." *Goulet v. Oculus Architecture Ltd.*, No. 8:18-cv-01475-JLS-JDE, 2019 WL 7841926, at *5 (C.D. Cal. Sept. 5, 2019). Courts look to the following factors in assessing statutory damages in copyright infringement cases:

> (1) The expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Twentieth Century Fox Film Corporation v. Saundry*, No. CV-16-8463-RSWL-MRWX, 2017 WL 3197227, at *7 (C.D. Cal. July 27, 2017).

Applying these factors here, Nintendo requests an award of statutory damages in the amount of $2,500. All of Defendant's profits from its circumvention device are unlawful, and the nature of the device saves Defendant and others the expense of purchasing or licensing authentic

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                - 12 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

Nintendo video games (factor 1), *see* Compl. ¶¶ 42, 56. Defendant has admitted by defaulting that Nintendo has lost revenue (factor 2), s*ee id.* at ¶ 33, and that Nintendo's sale of authentic copies of its Nintendo Switch video game console and video games is valuable (factor 3), *see id.* The award would have a deterrent effect on Defendant and similar actors that enable users to circumvent Nintendo's technological protection measures (factor 4). *See id.* at ¶¶ 24–25. Defendant knows full well that the sole purpose of its RCM Loader device is to enable others to circumvent Nintendo's technological measures and to play pirated games (factor 5). *See id.* at ¶ 67. Finally, the Defendant has not cooperated in either this lawsuit or the DMCA takedown procedure under 17 U.S.C. § 512(f), and without a financial deterrent, Defendant will continue to traffic in Defendant's circumvention devices (factors 6 and 7). *See id.* at ¶¶ 37–71.

Nintendo's request for a $2,500 award is highly conservative. As noted, the DMCA entitles a copyright owner to a separate statutory damages award *per act* of circumvention, device, product, component, offer, or performance of service. *See* 17 U.S.C. § 1203(c)(3)(A). This statutory language authorizes courts to "award statutory damages *for each device sold*." *DISH Network LLC v. New Era Elecs. Corp.*, No. SACV 12-1097 DOC, 2013 WL 5486798, at *6 (C.D. Cal. Sept. 27, 2013) (emphasis added) (citing *Sony Computer Entm't America, Inc. v. Filipak,* 406 F.Supp.2d 1068, 1074. (N.D.Cal.2005) ("[Section] 1203(c)(3)(A) authorizes a separate award of statutory damages for each device sold"); *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F.Supp.2d 1039, 1064 (N.D. Cal. 2010)). Nintendo could thus credibly seek a separate award for every device Defendant sold—almost certainly *many* devices, given that Defendant's RCM Loader device was available online for many months, *see* Weimer Decl. ¶ 4.[4] However,

---

[4] Nintendo knows, for example, that Defendant sold *at least* three devices during this time. *See* Weimer Decl. ¶ 4.

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC            - 13 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

rather than attempt to quantify Defendant's total sales, Nintendo seeks to facilitate an efficient resolution of this case through entry of judgment awarding damages for a single § 1201 violation. Further underscoring the conservativeness of the requested amount, Nintendo at this time does not intend to seek its costs or attorney fees from Defendant, despite being entitled to do so. *See* 17 U.S.C. § 1203(b)(4)–(5).

### B. Actual Damages for Violations of the DMCA's Anti-Trafficking Provisions

Under the DMCA, a court may award either actual damages and the defendant's profits, or statutory damages. 17 U.S.C. § 1203(c)(1). To facilitate an efficient resolution, Nintendo here has elected to seek statutory damages in lieu of actual damages and profits. *See supra* Section III.A. If the Court awards the $2,500 in statutory damages requested, it can enter judgment for Nintendo on that amount without further consideration of Nintendo's claims for actual damages and profits.

### C. Attorney's Fees

Under 17 U.S.C. § 1203(b)(4) and (5), this Court may in its discretion award reasonable attorney's fees and costs to the prevailing party. "An award of attorney's fees to a prevailing [party] that furthers the underlying purposes of the Copyright Act is reposed in the sound discretion of the district courts." *Propet USA, Inc. v. Shugart*, No. C06-0186-MAT, 2008 WL 11506737, at *1 (W.D. Wash. May 2, 2008).

Nintendo has incurred substantial reasonable attorney fees in pursuing this matter, which it is statutorily entitled to recover within the Court's discretion. However, for the same efficiency reasons discussed above, Nintendo does not intend to seek its attorney fees and costs at this time if the Court grants Nintendo's highly conservative request for $2,500 in statutory damages. If new relevant facts or circumstances develop after the Court's entry of judgment, Nintendo reserves the right to file an appropriate post-judgment motion concerning any relief warranted by those new facts or circumstances.

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC                    - 14 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200

## CONCLUSION

Nintendo is entitled to a default judgment on all of its claims. Nintendo asks the Court to enter the proposed order granting default judgment attached to this motion, along with any other relief the Court deems just and proper.

DATED April 14, 2021

By: *s/ Christopher Weimer*
Christopher Weimer (pro hac vice)
Travis W. Wimberly (pro hac vice)
Pirkey Barber PLLC
1801 E. 6th St., Suite 300
Austin, TX  78702
(512) 322-5200
(512) 322-5201 (fax)
cweimer@pirkeybarber.com
twimberly@pirkeybarber.com

By: *s/ Chelsey L. Mam*
Michael Rosenberger
Chelsey L. Mam
Gordon Tilden Thomas & Cordell LLP
One Union Square
600 University St., Suite 2915
Seattle, WA 98101
(206) 467-6477
(206) 805-3161 (fax)
mrosenberger@gordontilden.com
cmam@gordontilden.com

*Attorneys for Plaintiff Nintendo of America Inc.*

Motion for Default Judgment

No. 2:20-cv-01707-RSM-JRC — - 15 -

Pirkey Barber PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
(512) 322-5200